IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MTR GAMING GROUP, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 11-208 ERIE |
| v. ) | |
| ) | |
| EDSON R. ARNEAULT, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Before the Court is MTR's Motion for Partial Reconsideration of the Court's September 27, 2012 Order (doc. no. 23) Granting Arneault's Motion to Dismiss Count VI (for Violation of Pennsylvania's Trade Secrets Protection Act) with Prejudice. Doc. no. 27.[1] Arneault filed a Response to the Motion for Partial Reconsideration (doc. no. 29), making the matter ripe for disposition. For the reasons set forth below, MTR's Motion for Partial Reconsideration will be denied.

Because the Court writes primarily for the benefit of the parties who are intimately familiar with the facts and procedural history of this case, and because the prior Court Order (doc. no. 23) gave a thorough recitation of all relevant facts, a factual background will not be provided as a separate section herein. Instead, the Court will set forth any facts necessary to explain its decision to deny this Motion for Partial Reconsideration in the "Discussion" section, *infra*.

---

[1] This case originated in the Erie Division of the United States District Court for the Western District of Pennsylvania and was originally assigned to former Chief Judge McLaughlin. On August 27, 2013, this case was reassigned to this Court for further adjudication.

## I. Standard of Review

A Motion for Reconsideration is a device of limited utility. *Pahler v. City of Wilkes Barre*, 207 F.Supp.2d 341, 355 (M.D. Pa. 2001). "The purpose of a Motion for Reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence." *Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc.*, 602 F.3d 237, 251 (3d Cir. 2010), citing *Max's Seafood Café by Lou Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).

Generally, a Motion for Reconsideration will only be granted if the moving party can prevail on one of the following three grounds: (1) if there has been an intervening change in controlling law; (2) if new evidence, which was not previously available, has become available; or (3) if it is necessary to correct a clear error of law or to prevent manifest injustice. See, *Howard Hess Dental,* 602 F.3d at 251, citing *Max's Seafood Café*, 176 F.3d at 677.

A Court may not grant a Motion for Reconsideration when the motion simply restyles or rehashes issues previously presented. *Pahler* 207 F.Supp.2d at 355; see also *Carroll v. Manning*, 414 Fed. Appx. 396, 398 (3d Cir. 2011) (affirming denial of "motion for reconsideration and 'petition' in support thereof appears to merely reiterate the allegations made in the . . . petition and does not set forth any basis justifying reconsideration."); and *Grigorian v. Attorney General of U.S.*, 282 Fed. Appx. 180, 182 (3d Cir. 2008) (affirming denial of Motion to Reconsider because it "does nothing more than reiterate the arguments underlying his motion to reinstate the appeal.").

A Motion for Reconsideration "addresses only factual and legal matters that the Court may have overlooked . . . . It is improper on a motion for reconsideration to ask the Court to rethink what [it] had already thought through rightly or wrongly." *Glendon Energy Co. v.*

*Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (internal citation and quotes omitted). Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly. *Rossi v. Schlarbaum*, 600 F.Supp.2d 650, 670 (E.D. Pa. 2009).

## II. Discussion

Returning to the three bases upon which a Partial Motion for Reconsideration, such as this one, may be granted, MTR here does not argue that: (1) there has been an intervening change in controlling law, nor (2) new evidence, which was not previously available, has become available; rather, Plaintiff claims that reconsideration of Chief Judge McLaughlin's prior Order (doc. no. 23) is necessary to (3) correct a clear error of law or to prevent manifest injustice.

### A. The Court's Interpretation of the Release of MTR's Claims

#### 1. Interpretation of Sections 3.1 and 3.2 of the Settlement Agreement

First, MTR contends that the Court's interpretation of the phrase "any and all claims" set forth in its Settlement Agreement with Arneault incorrectly assumed that "any and all claims" included future claims, thereby constituting a clear error of law or creating a manifest injustice. Doc. no. 28, p. 2.

Under West Virginia law, settlement agreements are contracts and subject to enforcement like any other contract.[2] *Marcus v. Staubs,* 736 S.E.2d 360, 374 (W.Va. 2012). Contract interpretation is a question of law requiring a court to determine the meaning and legal effect solely from the document's contents. *Stanley v. Huntington Nat. Bank*, 492 Fed.Appx. 456, 459 (4th Cir. 2012). Where the contract language is clear and unambiguous, it "cannot be construed and must be given effect and no interpretation thereof is permissible." *Stanley v. Huntington Nat. Bank,* 492 Fed.Appx. 456, 459 (4th Cir. 2012) quoting *Berkeley Cnty. Pub. Serv. Dist. v. Vitro*

---

[2] The parties agree that West Virginia law applies to the contract (*i.e.*, the Settlement Agreement) at issue.

*Corp. of Am.*, 162 S.E.2d 189, 200 (W.Va. 1968); see also *Kanawha Banking & Trust Co. v. Gilbert*, 46 S.E.2d 225, 232–33 (W.Va. 1947).  A contract is ambiguous only if it is "reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." *Mylan Labs. Inc. v. Am. Motorists Ins. Co.*, 226 W.Va. 307, 700 S.E.2d 518, 524 (2010).  In interpreting the contract, the court must construe the terms of the contract so as to give meaning and effect to every part of the contract.  *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1127 (4th Cir. 1993).

As noted above, MTR urges this Court to reconsider the determination that the plain meaning "any and all claims" included future claims.  "[A]lthough a general release usually includes only claims in existence at the time it is executed, it may bar contingent and future claims when the intent of the parties to that effect is clear." *Nahtel Corporation v. West Virginia Pulp & Paper Co.*, 141 F.2d 1 (2d Cir. 1944); see also, *Murphy v. North Am. River Runners, Inc.*, 412 S.E.2d 504, 511 (W.Va. 1991) (Language of a preinjury exculpatory agreement or anticipatory release stating that defendant is relieved in effect from all liability for any future loss or damage is sufficiently clear to waive common-law negligence action, even though language does not include explicitly the words "negligence" or "negligent acts or omissions").

In *Multiplex, Inc. v. Raleigh County Bd. of Educ.*, 709 S.E.2d 561 (W.Va. 2011), the Supreme Court of Appeals of West Virginia determined that a release stating that it was limited to "events arising out of the alleged wrongful acts set forth in the aforementioned Complaint [filed in 2006 by the plaintiff]" was the only matter released, because this was the only such matter as may fairly be said to have been within the contemplation of the parties at the time the release was executed. 706 S.E.2d at 564.

Here, it is undisputed that the parties agreed to the following in their multi-page Settlement Agreement: In Section 3.1, Arneault agreed to release MTR from, "any and all claims . . . which [Arneault] now has or may have against [MTR] through and including the Effective Date of this [Settlement] Agreement." See section 3.1 of the Settlement Agreement. In Section 3.2 of the same Settlement Agreement, MTR released Arneault from "any and all claims . . . actual or alleged, known or unknown, including those which relate to the Lawsuit, the Employment Agreement, the DCA[,] and, . . . all claims under the Consulting Agreement." See section 3.2 of the Settlement Agreement.

Based on this distinctive and divergent language found in two successive clauses of the Settlement Agreement, and a comparison of same, the Court determined that document clearly expressed the parties' intent to bar all any and all claims of MTR (including those that were "known and unknown" and including those which related to the Lawsuit, etc.), as well as the parties' intent to bar any and all of Arneault's claims through the effective date of the Settlement Agreement. The different language signaled to the Court that the parties differed with respect to the scope of their releases. The Court continues to conclude that a plain reading of these two clauses results in two different scopes, and the Court declines to "rethink" this matter, given that it is clear that Court has already thought it through.

### 2. Interpretation of Sections 3.7 of the Settlement Agreement

Next, the Court held that the "Settlement Agreement makes clear that MTR was aware of and concerned about the possibility that Arneault might engage in the unauthorized disclosure of its trade secrets at some point in the future." Doc. no. 23, p. 29, citing Section 2.5 of the Settlement Agreement. The Court also noted that Section 2.6 of the Settlement Agreement required Arneault to return all proprietary trade secret information to MTR. Id., p. 30. Finally,

the Court noted that Section 3.7 of the Settlement Agreement "expressly reserves to MTR the right to enforce this contractual obligation notwithstanding the release provision [referring to Section 3.2 where MTR released Arneault from "any and all claims"]." The Court continued in this vein by stating:

> In creating this contractual remedy, the parties mutually acknowledged MTR's interest in preserving its confidential trade secrets from unauthorized divulgence on the part of Arneault in the future. Further, the parties expressly empowered MTR to protect against this contingency, but only insofar as MTR could enforce its contractual rights under the Settlement Agreement. Importantly, the reservation-of-rights clause in the Settlement Agreement applies only to "rights, privileges, benefits, duties or obligations *imposed upon any of the Parties by reason of, or otherwise arising under, this Agreement.*" (Complaint Ex. 2 at ¶ 3.7 (emphasis added).) Because this reservation-of-rights provision expressly preserves only contractual remedies arising under the Settlement Agreement and omits any mention of rights arising under statutory or common law tort principles, and in light of the otherwise broad language of the release language, we may infer that the release provision was intended to cover the type of tortious trade secret violations contained in Count 6. This inference is especially warranted given the parties' express acknowledgement in the Settlement Agreement that they were represented by counsel during the negotiations process and entered into the Agreement with full awareness of its terms. See *West*, *supra*, at *2 (upholding general release provision which was clear and unambiguous where, among other things, the plaintiffs against whom the provision was being raised were represented by counsel during the negotiation of the settlement and were apparently aware of and consented to the release language). *Accord Grant County Sav. & Loan Ass'n v. RTC*, 968 F.2d 722, 724-25 (8th Cir. 1992) (cited in *Grant*, *supra*, for the proposition that "court of appeals will assume parties were fully aware of the terms and scope of their agreement when they have negotiated the release with the assistance of counsel and agreed to the language").

Id., pp. 30-31.

MTR contends that this conclusion is in discord with West Virginia law. In support of its contention, MTR cites authority from the Court of Appeals for the Fourth Circuit, and claims those cases stand for the proposition that West Virginia law allows a party to assert both a statutory claim under West Virginia's Uniform Trade Secrets Act as well as breach of contract claim for violating a trade secret provision. Doc. no. 28, p. 11. While this Court certainly acknowledges those cases, the Court notes that MTR incorrectly asserts that the Court of

Appeals for the Fourth Circuit has determined that a party such as MTR cannot relinquish, vis-à-vis its Settlement Agreement with Arneault, any statutory claim it may hope to pursue under West Virginia's Uniform Trade Secrets Act.  A party is free to contract away any rights it may have, and as Judge McLaughlin's Opinion noted (see quote above), MTR did just that with the assistance of its own counsel.   Again, this Court will not "rethink" that issue, and, will not grant MTR's Motion for Reconsideration in this regard.

### 3. Interpretation Required Extrinsic Evidence and Discovery

Third, MTR suggests that the language of the Release is ambiguous and should not be interpreted at this juncture of the legal proceedings, thereby allowing the parties to move forward with discovery on Count VI.  MTR cites law from the United States Court of Appeals for the Third Circuit for the procedural question of whether a Motion to Dismiss under Fed.R.Civ.P. 12 is the appropriate stage of litigation to interpret a settlement agreement such as the one in this case.  In making this argument, MTR first assumes that the Court found the relevant provisions of the Settlement Agreement ambiguous.

The Court properly considered the Settlement Agreement's terms (which impacted its ruling on Count VI), because the Settlement was attached to the Complaint, and said terms were not ambiguous.  These terms were plain on their face and, as noted above, the Court conducted a thorough analysis of each relevant section of the Settlement Agreement, and ultimately concluding that the "plain meaning" of those relevant sections called for the dismissal of Count VI.

As this Court has noted above, West Virginia contract interpretation law requires a Court to determine the meaning and legal effect solely from the document's contents, see *Stanley, supra.,* and settlement agreement are subject to the rules of contract interpretation and

enforcement. See *Huntington Nat. Bank*, *supra*. MTR's suggestion that the Court committed a "manifest legal error" when it without considering extrinsic evidence or allowing discovery is not a viable argument, given that the Settlement Agreement was unambiguous and thus, consideration of such evidence would have violated both procedural Third Circuit and substantive Fourth Circuit law.

### III. Conclusion

Based on the foregoing law and authority, the Court will deny MTR's Motion for Reconsideration of the Court's September 27, 2012 Order (doc. no. 23) and will enter an appropriate Order simultaneously with the filing of this Opinion.

          s/Arthur J. Schwab
          Arthur J. Schwab
          United States District Judge

cc:    All ECF counsel of record